# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOY DEBELLIS, As Administratrix** | : | **No. 3:07cv1932** |
| **of the Goods, Chattel and Credits** | : | |
| **of Louis J. DeBellis, Deceased,** | : | **(Judge Munley)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KENNETH MAULA,** | : | |
| **MARLENE MAULA,** | : | |
| **ANTHONY P. MAULA, and** | : | |
| **EMPIRE CONSTRUCTION LIMITED,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are defendants' motion to dismiss for failure to state a claim and defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Having been fully briefed and argued, the matter is ripe for disposition.

**Background**

This case arises from the July 1985 killing of Louis DeBellis, husband of plaintiff Joy DeBellis in the Bronx, New York. Defendant Kenneth Maula shot and killed DeBellis in July 1985. (Amended Complaint (hereinafter "Complt") at ¶¶ 4, 12). In October 1985, Joy DeBellis filed a civil action against Kenneth Maula in New York Supreme Court for Bronx County. (Id. at ¶ 13). After an indictment for second degree murder, a Bronx County jury found Kenneth Maula guilty of first-degree manslaughter in 1987. (Id. at ¶¶ 14-15). That conviction was overturned on appeal.

(Id. at ¶ 15).  A second jury then acquitted him of manslaughter but found him guilty of criminal possession of a weapon in the fourth degree.  (Id.).  He was sentenced to a year in prison.  (Id.).  Maula was in prison from 1990 to 1991.  (Id. ¶ 16).   A jury in 1991 found Kenneth Maula liable in a wrongful death action and awarded Joy DeBellis $208,744 in damages.  (Id. at ¶ 17).  Joy DeBellis appealed, and the judgment increased to $1,058,744.  (Id. at ¶ 17).

Kenneth Maula has never satisfied this judgment.  (Id.).  Plaintiff estimates the present value of the judgment at $3.2 million.  (Id.).  On or about March 11, 1993, Kenneth Maula filed a Chapter 7 Bankruptcy Petition in the United States District Court for Middle District of Pennsylvania.  (Id. at ¶ 18).  That action stayed execution of the wrongful death judgment.  (Id.).  In November 1996, the bankruptcy court found that the wrongful death judgment meant that Maula's actions in killing DeBellis were willful and malicious, and that the bankruptcy debt was not dischargeable. (Id.).  On November 25, 1998, Judge Thomas I. Vanaskie of the United States District Court for the Middle District of Pennsylvania affirmed this opinion.  (Id.).

Plaintiff alleges that defendants have transferred legal title to more than $1 million worth of property from Kenneth Maula to his wife, Defendant Marlene Maula. Plaintiff contends that equitable title to this property remains in Kenneth Maula's hands.  Before the incident in question, Kenneth Maula owned and operated a printing business in the Bronx, New York, commuting weekly to the business from his home in Monroe County, Pennsylvania.  (Id. at ¶ 19a).  Besides this printing

2

business, Maula also operated a real estate development business in Monroe County with Donald Griffin.  (<u>Id.</u> at ¶ 19b).  This business went by a variety of names, such as Griffin and Maula, Griffin Maula, Inc., Colossal Enterprises, Royal Oaks Development Ltd and Eastway Company.  (<u>Id.</u>).  These businesses took various forms, from a general partnership to corporations.  (<u>Id.</u>).  At the time of plaintiff's husband's death, Kenneth Maula and Donald Griffith each owned fifty percent of the business.  (<u>Id.</u>).  The real estate development company was involved in projects such as renovating factory buildings into apartments, making an old ice house into a disco and storage space and developing vacant lots for modular housing.  (<u>Id.</u> at ¶ 20).

Plaintiff alleges that as part of a scheme to avoid satisfying any judgment against him, Kenneth Maula transferred much of the property controlled by this company to his wife for no consideration.  (<u>Id.</u> at ¶ 21).  He retained equitable title to the property, as evidenced by the fact that he continued to manage the transferred assets and to use them for his benefits.  (<u>Id.</u> at ¶ 21(1)).  Kenneth Maula also directed the dissolution of the partnership and the sale of assets when the partnership dissolved.  (<u>Id.</u> at ¶ 21(2)).  He directed the bidding for assets to which the legal title had been assigned to Marlene Maula.  (<u>Id.</u>).  Kenneth Maula also benefitted from the proceeds of this business, which were either transferred to his wife in cash or deposited into a joint bank account shared by Kenneth and Marlene Maula.  (<u>Id.</u> at ¶ 21(1)).  Kenneth Maula funded his lifestyle through this accumulated

income.  (Id.).  Funds generated by this business also ended up in the accounts of

Defendant Empire Construction, forming the basis of that company's capital assets.

(Id.).  Plaintiff alleges that Kenneth Maula controlled the operations of Empire

Construction at all times material to the complaint.  (Id.).  Most of this activity related

to the Griffin-Maula partnership occurred in 1986 and 1987.  (Id. at ¶ 23).[1]

Plaintiff alleges that the property transferred during this period had a value of

$2.1 million. (Id.).   After the Griffin-Maula partnership sold off its assets, Marlene

Maula received property worth at least $1.08 million.  (Id.).  The complaint contends

that Marlene Maula continued to control much of the property she obtained during

this period for a number of years, eventually transferring many of those assets and

using them for her and her husband's benefit.  In 1988, for instance, Marlene Maula

allegedly received a piece of property in East Stroudsburg, Pennsylvania, even

though she did not pay the $50,500 recorded as consideration for the deed.  (Id. at ¶

23(b)).  Marlene Maula continued to control this property until 2006, using Defendant

Empire Construction to build townhomes on the property, receiving rental income

from those structures, and eventually selling them for $425,000.  (Id. at ¶ 23( c)).

Marlene Maula likewise sold another piece of property for which she had provided no

---

[1]Plaintiff's complaint also points to other assets formerly controlled by Kenneth Maula which he transferred to his wife.  On April 15, 1986, for instance, Kenneth Maula transferred a lot in a Pennsylvania Subdivision to his wife for $1.00.  (Complt. at ¶ 22). This lot was the only valuable asset of Kenneth Maula Associates, Inc.  (Id.).  Two years later, Marlene Maula conveyed that asset for $150,000, using the proceeds for the benefit of Empire Construction or Kenneth Maula.  (Id.).

consideration in East Stroudsburg, Pennsylvania for $225,000 in 1988.  (<u>Id.</u> at ¶¶ 23(e-f)).

This alleged project of fraudulent property transfers which resulted in substantial earnings for Marlene Maula continued into the 1990s.  (<u>Id.</u> at ¶ 24).  On June 30, 1999, for instance, Kenneth and Marlene Maula sold their home in Monroe County, Pennsylvania to a third party for $250,000.  (<u>Id.</u> at ¶ 24(a)).  Marlene Maula received all of the proceeds from the sale, thus allegedly transferring Kenneth Maula's interest to her without receiving any consideration.  (<u>Id.</u>).  In December 1999, Kenneth Maula transferred to Marlene and Anothy Maula his interest in three lots in Monroe County, Pennsylvania for $1.00 in consideration.  (<u>Id.</u> at ¶ 24(b)).  Finally, in 2005 Kenneth Maula purchased and took title to a Subaru automobile.  (<u>Id.</u> at ¶ 24 (c)).  Marlene Maula immediately placed a lien on that property, protecting it from execution by Joy DeBellis on the wrongful death judgment.  (<u>Id.</u>).  Kenneth Maula has not made any payments to Marlene Maula to satisfy this lien.  (<u>Id.</u>).

Defendant Empire Construction was also allegedly involved in this scheme.  (<u>Id.</u> at ¶ 25).  Plaintiff alleges that Empire Construction was the Maula family business, with Marlene Maula serving as president and Anthony Maula as vice president.  (<u>Id.</u>).  Kenneth Maula, Jr., son of Defendants Marlene and Kenneth Maula, serves as Empire's accountant.  (<u>Id.</u>).  Lori Porter, another of the Maula's children, and her husband have also worked for Empire.  (<u>Id.</u>).  Empire Construction appeared in 1987; Marlene and Anthony Maula each owned 50% of the business.

(Id. at 26).  Anthony was twenty-two years old and recent college graduate.  (Id.).

Neither of the co-owners had any experience in construction or real estate

development, though they had some experience in selling modular homes.  (Id.).

Kenneth Maula, Sr. routinely directed these sales.  (Id.).  Plaintiff alleges that

Marlene and Anthony Maula agreed with Kenneth Maula that Kenneth Maula would

control Empire, regardless of who was the owner of record.  (Id. at ¶ 27).  Kenneth

Maula allegedly managed and controlled Empire during all times relevant to the

complaint.  (Id.).  Empire developed a large number of residential and commerical

products during this period.  (Id.).  The company reinvested profits from the earliest

transactions in new projects, creating a growing concern that operated under

Kenneth Maula's control.  (Id. at ¶ 28).  Despite his substantial role in the company,

Kenneth Maula never earned more than $39,000 a year for his services.  (Id. at ¶

29).  Nevertheless, Marlene Maula funded Kenneth Maula's comfortable lifestyle,

which included a large home, vacation home, vacations both domestic and abroad,

health and retirement plans and a time share apartment in Manhattan.  (Id. at ¶ 30).

Though Empire's economic activity has provided Marlene and Anthony Maula with

net worths of around $7 million and Marlene Maula with a yearly income of around

$1 million, Kenneth Maula has only $5,000 in his own assets.  (Id. at ¶ 31).

Plaintiff alleges that Kenneth Maula used a series of fraudulent transfers and

other false statements to evade the judgment entered against him in the Bronx.  (Id.

at ¶ 32).  Kenneth Maula allegedly backdated an indenture recorded in the Office of

6

the Monroe County Recorder of Deeds to make it appear that he had transferred his

interest in Griffin-Maula before the incident that led to judgment against him, rather

than after it.  (Id. at ¶ 32(a)).  The actual transfer in question occurred in September

1987, but was recorded as taking place in January 1985.  (Id.).  When deposed in

June 1992 about his assets in connection with the wrongful death lawsuit, Kenneth

Maula allegedly concealed many of the critical facts regarding his assets by

testifying falsely that he had not transferred any property to anyone since 1985.  (Id.

at ¶ 35(b)).   Plaintiff contends that Kenneth Maula did not correct the false testimony

he provided in 1992 until deposed in 2007 in connection with this proceeding.  (Id. at

¶ 35 (c)).  Kenneth Maula also allegedly did not disclose assets to which he

continued to hold equitable title in his Chapter 7 bankruptcy proceeding in the 1990s.

(Id. at ¶ 35(d)).  In this proceeding, plaintiff contends, defendant has continued to

conceal the value of his present assets, continuing his pattern of fraudulent

concealment.  (Id. at ¶ 35(e)).

Plaintiff did not take any action on her New York judgment from 1998 until she

filed the instant action on October 23, 2007.  Plaintiff then filed an amended

complaint on December 6, 2007, before the defendants answered.  Count I seeks

declaratory relief in the form of a judgment from the court declaring that up to $3.2

million of the stock of Empire titled to Anthony and Marlene Maula is Kenneth

Maula's property and subject to execution to satisfy the full amount of the wrongful

death judgment. This count is one of unjust enrichment, alleging that Defendants

Kenneth and Marlene Maula were unjustly enriched by the proceeds of their

fraudulent transfers.  Plaintiff also seeks a declaration that all of Marlene Maula's

other assets are likewise subject to execution to satisfy the judgment.  Count II

alleges common law fraud by Defendants Marlene and Kenneth Maula in an attempt

to avoid payment of the wrongful death judgment.  Count III alleges a civil conspiracy

to create the fraudulent scheme by Marlene and Kenneth Maula.  Count IV alleges

fraudulent transfers from Kenneth Maula to Marlene Maula and Empire Construction.

Plaintiff contends that Marlene Maula and Empire Construction were not good faith

transferees and did not take the property for value.  Plaintiff seeks up to $3.2 million

dollars from this property.

Defendants filed motions to dismiss and all parties briefed those motions.

Defendants Empire Construction and Anthony Maula also filed a motion for

sanctions against the plaintiffs pursuant to Federal Rule of Civil Procedure 11.  The

court entertained argument on both those motions, bringing the case to its present

posture.

**Jurisdiction**

Plaintiff is a citizen of New York.  Defendants are citizens of Pennsylvania and

a Pennsylvania corporation with its principle place of business in that state.  The

amount in controversy exceeds $75,000.  The court therefore has jurisdiction

pursuant to 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of

all civil actions where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between (1) citizens of different states.").

**Legal Standard**

Before the court are defendants' motions to dismiss the instant complaint. When analyzing a 12(b)(6) motion to dismiss, all well-pleaded allegations of the complainant must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-666 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)(citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The complaint is properly dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-521 (1972)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**A. Motion to Dismiss**

The court will first address the motions to dismiss.  Marlene Maula, Kenneth Maula, and Anthony Maula and Empire Construction filed separate motions to dismiss.  Marlene and Kenneth Maula raise the same grounds in their motions. Anthony Maula and Empire Construction raise additional grounds.

### i. Statute of Limitations

All of the defendants raise the argument that the statute of limitations bars plaintiff's claim.  We will combine them here.

Marlene Maula and Kenneth Maula argue that the statute of limitations has run on the action.  They contend that the statute of limitations began to run at the latest on November 25, 1998, when Judge Vanaskie issued his order that found that Kenneth Maula's debt was not dischargeable in bankruptcy.  Plaintiff filed her complaint seven years after this date.  In addition, the fraudulent conveyances that are the subject of the litigation occurred more than twenty years ago.  Two 1999 real estate transactions were also referenced in the complaint; defendants argue that these were not fraudulent conveyances because Kenneth Maula was involved only as a spouse and not a partner.

 The court will address each of the plaintiff's four claims separately to determine whether that count satisfies the statute of limitations.  The court notes that "[a]s a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the

10

prescribed statutory period."  <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>,

468 A.2d 468, 471 (Pa. 1983).  Thus, "the statute of limitations begins to run as soon

as the right to institute and maintain a suit arises; lack of knowledge, mistake or

misunderstanding do not toll the running of the statute of limitations, even though a

person may not discover his injury until it is too late to take advantage of the

appropriate remedy."  <u>Id.</u>  Once the statute of limitations has run, the claim is barred,

"unless it is established that an exception to the general rule applies which acts to

toll the running of the statute."  <u>Id.</u>  Plaintiff's claims here cannot survive without

some means of tolling the statute of limitations.

### a.  Declaratory Relief–Unjust enrichment

Plaintiff's first count seeks declaratory relief.  When a plaintiff seeks a remedy

in equity, Pennsylvania courts have found that "statutes of limitation are 'not

controlling in equity,' but only 'provide guidance in determining the reasonableness

of any delay.'"  <u>United National Ins. Co. v. J.H. France Refractories Co.</u>, 668 A.2d

120, 124 (Pa. 1995) (quoting <u>Kay v. Kay</u>, 334 A. 2d 587 (Pa. 1975)).  Courts instead

apply the equitable doctrine of laches, which "does not depend upon the fact that a

definite time has elapsed since the cause of action accrued, but whether, under the

circumstances of the particular case, the complaining party is guilty of want of due

diligence in failing to institute his action to another's prejudice.'"  <u>Id.</u> at 124 (quoting

<u>Class of Two Hundred Admin. Faculty Members of State Colleges in Commonwealth</u>

<u>v. Scalon</u>, 466 A.2d 103, 105 (Pa. 1983)).  The doctrine of laches can both extend

and shrink the statute of limitations, depending on the reasonableness of any delay

in by the plaintiff in filing the action.  Id. at 124-125.  Still, "'in the absence of fraud or

concealment, it is a general rule that laches follows the statute of limitations.'" Id. at

124 (quoting Silver v. Korr, 139 A.2d 552, 555 (Pa. 1958)).

        The court must thus first determine the applicable statute of limitations that

applies in this case. Courts have found that "when plaintiffs' claims are barred by a

statute of limitations applicable to the concurrent legal remedy, then a court will

withhold declaratory judgment relief in an independent suit essentially predicated

upon the same cause of action."  Algrant v. Evergreen Valley Nurseries Limited

Partnership, 126 F.3d 178, 184-85 (3d Cir. 1997); see also Cope v. Anderson, 331

U.S. 461, 464 (1947) (holding that "equity will withhold its relief in such a case where

the applicable statute of limitations would bar the concurrent legal remedy.").

Plaintiff's declaratory judgment claim is based on unjust enrichment.  In

Pennsylvania, unjust enrichment carries a four-year statute of limitations.  Harry

Miller Corp. v. Mancuso Chemicals, Ltd., 469 F. Supp. 2d 303, 348 (E.D. Pa. 2007).

The claim accrues "when the defendant 'receives and retains benefits.'" Id. (quoting

Konidaris v. Portnoff Law Associates, Ltd., 884 A.2d 348, 355 (Pa. Commw. Ct..

2005)).  The statute of limitations began to run at the latest in 1998, when Judge

Vanaskie determined that plaintiff's claim survived Kenneth Maula's bankruptcy

filing.  The statute of limitations on this claim has thus clearly run, and plaintiff must

therefore overcome the presumption that her claim is barred in equity.

12

Here, plaintiff must demonstrate some reason within the laches doctrine to conclude that the case was timely filed.  A claim is barred by laches "'when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.'" Silver v. Korr, 139 A.2d 552, 555 (Pa. 1958) (quoting Grote v. Trust, 135 A.2d 383, 387 (Pa. 1957)); see also Brodt v. Brown, 172 A.2d 152, 153 (Pa. 1961) (defining laches as "neglect for an unreasonable and unexplained time under circumstances permitting diligence to do what in law should have been done."); In re Eagson Corp., 1 B.R. 777, 779 (E.D. Pa. 1980) (establishing that "[l]aches is an equitable concept based on the theory that a plaintiff who has slept on his rights for an unreasonably long time should not be permitted to bring suit where the delay has prejudiced the defendant.").   "The question of laches is factual and is determined by examining the circumstances of each case." Leedom v. Thomas, 373 A.2d 1329, 1332 (Pa. 1977).  Still, "[i]f a statutory limitations period that would bar legal relief has expired, then the defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable delay and prejudice.  In that case, the burden shifts to the plaintiff to justify its delay and negate prejudice." Equal Employment Opportunity Commission v. The Great Atlantic & Pacific Tea Company, 735 F.2d 69, 80 (3d Cir. 1984); see also Santana Products, Inc. v. Bobrick Washroom Equipment, Inc., 401 F.3d 123, 139 (3d Cir. 2005) (finding that if the statute of limitations has run on a claim the plaintiff "carrie[s]

the burden of proving that [her] delay was excusable *and* that it did not prejudice" the defendant) (emphasis in original).

Plaintiff's explanation for her delay in filing the instant action relies on the trauma caused by her husband's death and the defendants' actions in allegedly transferring assets to avoid judgment. Plaintiff points out that her husband's killing in 1985 left her with three small children. (Plaintiff's Brief at 13). She filed a wrongful death lawsuit in that year, but had to wait until 1991 to go to trial on the matter. (Id.). By that time, defendants had already transferred property away from Kenneth Maula's control. (Id. at 13-14). When plaintiff deposed Kenneth Maula in 1992 he allegedly fraudulently concealed the fact that he had transferred property to family members. (Id. at 14). In 1993, when Maula filed for bankruptcy, he did not disclose his equitable ownership of the assets in question. (Id.). Nevertheless, plaintiff pursued an adversary proceeding that allowed her to prevent Kenneth Maula from discharging her New York court judgment in the bankruptcy proceeding. (Id.). Finally, in 1998, the bankruptcy court found in plaintiff's favor, determining that her claim survived the bankruptcy. (Id.). At this point in 1998, plaintiff contends that she "had no reason to take any particular steps to execute the judgment." (Id.). Instead, "she went on living her life until 2006," when she concluded that "it was again worth enduring the psychological pain of confronting Mr. Maula to see if he had accumulated any assets since the bankruptcy proceedings." (Id. at 14-15). In discovery related to this lawsuit in 2007, plaintiff finally discovered that plaintiff had

14

concealed some assets related to the construction company to avoid satisfying the judgment.

While the court sympathizes with the pain of plaintiff's loss and the difficulties of protracted litigation to recover her judgment, the delay in instituting the instant action is not excused by her explanation. Plaintiff pursued Kenneth Maula in litigation related to her husband's death from 1985 to 1998, despite the psychological burdens she undoubtedly confronted in that process. After the judgment in 1991, plaintiff knew she had a valid claim against the defendant and attempted to execute it. She persisted through years of bankruptcy court proceedings and by 1998 had established a clear right to execute against any property possessed by Kenneth Maula. The process of litigating the original wrongful death action and then the bankruptcy court proceeding may excuse plaintiff's failure to file any of the tort claims here asserted before 1998, since her claim to the property in question was tenuous to that point.[2] Plaintiff's only excuse for not instituting an action in the nine years between 1998 and 2007, however, is her mental fatigue related to the earlier litigation. Without any more substantial explanation, the court concludes that the plaintiff's delay in filing the action was inexcusable. Plaintiff has offered no substantive justification for her delay in filing the action, and laches therefore applies to bar the claim.

---

[2]Because the court's decision would be the same regardless of whether plaintiff's claim accrued in 1991 or 1998, the court will not reach a decision on that issue.

The court notes, however, that we have not found that plaintiff has abandoned her attempts to force Kenneth Maula to satisfy the judgment against him, which he has clearly taken great pains to avoid paying.  Here, however, the question is not whether Kenneth Maula must satisfy plaintiff's judgment against him from property he controls, but whether plaintiff can bring legal claims alleging that property to which he no longer has legal title actually belongs to him.  If Kenneth Maula were to come into legal title to any property, plaintiff could bring an action to recover that property.  The instant action, however, raises claims in tort against a number of defendants, alleging that property to which they hold legal title was conveyed to them in violation of the law during the late 1980s and early 1990s.  The question before this court, then, is whether the statute of limitations or other equitable doctrines bar recovery of these claims.

### b.  Fraud

Under Pennsylvania law, a two-year statute of limitations applies to common-law fraud claims.  See 42 Pa.C.S.A. § 5524(7) (establishing a two-year statute of limitations for claims of injury to person or property "sounding in trespass, including deceit or fraud.").  The fraud here alleged by the plaintiff consists of Kenneth and Marlene Maula's transfers of property in an attempt to evade execution of the judgment.  These actions occurred mostly in the 1980s, though some transactions allegedly occurred in the late 1990s.  The parties appear to agree that the statute of limitations has run on all of plaintiff's actions.  Plantiff instead asserts that fraudulent

concealment by Defendant Kenneth Maula provides a reason for tolling the statute of limitations and preserving the claim.

Plaintiff argues that her delay in filing the instant action should be excused by the doctrine of equitable tolling based on defendants' alleged fraudulent concealment of their transfers of property from Kenneth Maula.   The doctrine operates to toll an applicable statute of limitations because the actions of the defendant prevented the plaintiff from discovering her injury or its source. "[E]quitable tolling is proper only when 'the principles of equity would make [the] rigid application [of a limitation period] unfair.'" Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998) (quoting Shendock v. Director, Office of Workers' Compensation Programs, 893 F.2d 1458, 1462 (3d Cir. 1990)).  Equity generally operates to toll the statute of limitations when a plaintiff has "'in some extraordinary way . . . been prevented from asserting his or her rights.'" Id. (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)).  A party seeking to use this doctrine "must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'" Id. at 618-19 (quoting New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997)).  "Mere excusable neglect is not sufficient."  Id. at 619.

Plaintiff here relies on the doctrine of fraudulent concealment; she argues that defendants' actions in concealing Kenneth Maula's ownership of certain pieces of property operates to toll the statute of limitations.  The Pennsylvania Supreme Court

17

has described fraudulent concealment as "based on a theory of estoppel." <u>Fine v.</u>
<u>Checcio</u>, 870 A.2d 850, 860 (Pa. 2005).  Under that rule, "the defendant may not
invoke the statute of limitations, if through fraud or concealment, he causes the
plaintiff to relax his vigilance or deviate from right of inquiry into the facts." <u>Id.</u>  In
addition, the Pennsylvania Supreme Court has concluded that "a statute of
limitations that is tolled by virtue of fraudulent concealment begins to run when the
injured party knows or reasonably should know of his injury and its cause." <u>Id.</u> at
861.  Even when a party acts to conceal the events that give rise to the cause of
action, "the responsibility of a party who seeks to assert a cause of action against
another [must] be reasonably diligent in informing himself of the facts upon which his
recovery may be based." <u>Id.</u>

Plaintiff here argues that the issue in this case is whether she exercised
reasonable diligence in determining whether she had a cause of action.  Because
the questions of whether the defendant's conduct prevented plaintiff from asserting
her rights and whether plaintiff exercised due diligence in asserting her claims are
questions of fact best left to the determination of a jury, plaintiff contends that
dismissing her claims at this stage would be premature.  (Plaintiff's Brief at 12).
According to the Pennsylvania Supreme Court, the question of whether a "party,
exercising reasonable diligence," could "ascertain that he has been injured and by
what cause" is usually a factual determination left to the jury.  <u>Fine</u>, 870 A. 2d at 858.
Thus, "a party is not under an absolute duty to discover the cause of his injury," but

"must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case." Crouse v. Cyclops Industries, 745 A.2d 606, 611-612 (Pa. 2000). If, however, "reasonable minds would not differ in finding that a party knew or should have know on the exercise of reasonable diligence of his injury and its cause," a court can make that determination as a matter of law. Fine 870 A.2d at 859.

In this case, the court finds that–as a matter of law–plaintiff's nine years of inaction between the Bankruptcy Court's determination that her claims against Kenneth Maula remained valid and the institution of the instant lawsuit constitute a lack of reasonable diligence in discovering her injury and its cause. While plaintiff contends that defendants worked to conceal the ownership of the property from her, she also admits that she made no effort to discover whether property had been transferred in the nine years between Judge Vanaskie's decision in the bankruptcy proceedings and the time she filed the instant complaint. A reasonable juror could not conclude that a plaintiff–especially a plaintiff who knew that the defendant had caused the death of her husband, had reasons to hide his assets, claimed poverty and lived very well–had exercised any diligence at all in waiting so long to pursue her claims against the transferred property. In addition, though the transfers of property made from Kenneth Maula to his wife and other entities were allegedly fraudulent, the parties agree that they were also recorded. A reasonable plaintiff would have monitored real estate transactions from a defendant who owed her a million dollar

judgment and acted to ascertain whether fraud lay behind those transactions. Plaintiff has let her claims regarding those transactions lie, and they have gone stale.

### c. Civil Conspiracy

"The statute of limitations for civil conspiracy is identical to the statute of limitations for the underlying substantive offense." Harry Miller Corp., 469 Fed. Supp. 2d at 318.  In this case, therefore, "[t]he Pennsylvania statute of limitations pertaining to the substantive offense most closely related to that which the defendants were alleged to have conspired to commit would govern." Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974).  Since the complaint here is about the fraudulent transfer of property from Kenneth Maula to Marlene Maula, the court will apply the rules for fraudulent transfer claims discussed below.  As such, a two-year statute of limitations applies to these claims.

The allegedly fraudulent transfers occurred in the late 1980s and 1990s.  The statute of limitations has thus clearly run on the action, and plaintiff can only obtain relief if she can apply a principle that tolls the statute.  Plaintiff asserts the same doctrine of equitable tolling for this claim as she does for her fraud claim.  These claims fail for the same reasons.

### d. Fraudulent Transfers

Plaintiff contends in her fraudulent transfer claim that Kenneth Maula transferred property to Defendants Marlene Maula and Empire Construction with the intent to hinder, delay or defraud Joy DeBellis's attempt to satisfy her judgment

20

against him.  The Pennsylvania Uniform Fraudulent Transfers Act, 12 PENN CONS. STAT. ANN. § 5101 *et seq.*, applies to claims that a debtor fraudulently conveyed property to avoid a creditor's claims.  Under the current version of the statute, a creditor generally must bring a claim "within four years of the transfer or within one year after the transfer or obligation was or could reasonably have been discovered" by the creditor.  K-B Building Co. v. Sheesley Construction, Inc., 833 A.2d 1132, 1136 (Pa. Super. Ct. 2003).  An earlier version of the statute, which defendants contend applies to this case because the allegedly fraudulent transfers took place before the February 1, 1994 effective date of the current act, established a two-year statute of limitations.  See In re Shields, 148 B.R. 783, 786 (E.D. Pa. 1993); In re Frascatore, 98 B.R. 710, 718 (E.D. Pa. 1989) (finding that the predecessor statute, the Uniform Fraudulent Conveyance Act, "is subject to a two-year Pennsylvania statute of limitiations.").  Whichever version of the statute applies, plaintiff has not raised her claim within the relevant period.   Plaintiff asserts the same principles for tolling the statute of limitations as she does for her other claims, and her claims fail for the same reasons.

### ii.  Equitable Ownership/Constructive Trust

Plaintiff contends that the statute of limitations does not apply to Count I of her claim because equitable ownership of the property in question does not reside in any of the defendants other than Kenneth Maula.  Because he still owns the property–whoever possesses title to it–and Kenneth Maula still enjoys benefits from

the property as if he retained ownership in it, the judgment plaintiff seeks to enforce

is good against the property here in question, regardless of when the other

defendants took apparent ownership of it.  Plaintiff contends that she seeks simply to

execute her judgment against property controlled by Kenneth Maula.  Likewise, the

plaintiff seeks to have the court declare that a constructive trust exists over the

property in question in this case.  She argues that the property was transferred to

avoid the judgment and defendants therefore cannot claim that any action on that

property is time-barred because they do not really own it.

  The court will reject this argument.  The basic problem with plaintiff's position

is that the transfers that conveyed this property to other parties in most instances

happened nearly two decades before plaintiff brought her claim.  The court cannot

declare that those transactions were somehow contrary to law without examining

them.  Finding equitable ownership residing with Kenneth Maula requires an

investigation, not just a declaration.  Certain legal requirements for finding equitable

ownership of property exist.  See, e.g. In re Ogalin, 303 B.R. 552, 558 (D. Conn.

2004) (establishing six "badges of fraud" to determine whether a debtor has

transferred property with the intent of "intentionally hindering, delaying or defrauding

his creditors.").  The outcome of such a finding, after all, would be to declare that

someone who claims legal ownership of a piece of property does not actually own

that property.  A party's equities, even when fraud is alleged, must be observed in

that setting.  As discussed above, examining such transactions is barred by both

22

equity and the statute of limitations in tort.

Similarly, the plaintiff is time-barred in asserting the remedy of a constructive trust. A constructive trust "is raised by construction of law or by operation of law." 51 P.L.E., TRUSTS § 2. "When the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest without necessarily violating some established principle of equity, the court will raise a constructive trust and will fasten it upon the conscience of the legal owner, thereby converting him or her into a trustee for the parties entitled to the beneficial enjoyment." Id.; see also, Fox v. Fox, 189 A. 758, 760 (Pa. Super. Ct. 1937) (defining a constructive trusts as "trusts not created by words expressed or implied, evincing an intention to create a trust, but by the construction of equity, in order to satisfy the demands of justice.'"). Even if we were to find that a constructive trust was a proper remedy under these circumstances, however, we would still be constrained by the fact that "[l]aches applies to both express trusts and trusts created by operation of law, whether resulting or constructive." Truver v. Kennedy, 229 A.2d 468, 476 (Pa. 1967). The court has already found that laches bar the application of equitable remedies in this case, and will reject the plaintiff's arguments on those grounds.

## B. Motion for Sanctions

Defendants Anthony Maula and Empire Construction filed a motion for sanctions (Doc. 28) on May 12, 2008. They argue that the plaintiff, while taking

23

depositions in the original wrongful death complaint in 1992, had information about the recipient of transfers she later claimed were fraudulently concealed.  In filing her complaint, defendants argue, plaintiff raised allegations she knew to be untrue.  In addition, defendants allege, plaintiff should be sanctioned because the claims she brought are completely meritless.

Under Federal Rule of Civil Procedure 11, an attorney who files a motion or pleading in the court certifies that the paper  "(1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."  FED. R. CIV. P. 11(b)(1-4).  That rule also allows the court to "impose an appropriate sanction on any attorney, law firm, or party" that violates the rule.  FED. R. CIV. P. 11(c)(1).  Under the rule, then, sanctions are available against "an attorney who fails to either 1) read the pleading; 2) make a reasonable inquiry into the factual and legal legitimacy of the pleading; or 3) file the pleading only for a proper purpose."  Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994).  "The

24

standard for testing an attorney's conduct is that of what was objectively reasonable under the circumstances." Id.  To avoid liability, "counsel 'must conduct a 'reasonable investigation of the facts and a normally competent level of legal research to support the representation.'" Id. (quoting Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 94 (3d Cir. 1988).

The argument here centers around a deposition taken of Kenneth Maula in 1992, wherein plaintiff contends he lied to obscure certain transactions and frustrate plaintiff's knowledge of her claims.  Defendants contend that plaintiff willfully misreads this deposition in her effort to rescue her claims.  The court disagrees and will not impose sanctions based on these facts.  Essentially, defendant contends that this deposition can only be read one way, and that the deposition is the only piece of relevant evidence on the question of the transfer of the properties.  The court finds that a reasonable attorney or party could have included a claim of fraudulent concealment, even based on these facts.  Further, a reasonable attorney could conclude that an allegation of an active program of concealment in order to avoid payment of a judgment imposed by a court could have merit, even when the judgment is old and the arguments for avoiding the statute of limitations or laches are daunting.  Courts regularly conclude that having a losing case is not grounds for sanction.  See Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987) (finding that "Rule 11 sanctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling.  Substantially more is required.").  Nor is unsuccessful

advocacy of an argument for a change or extension in the law.  Id. at 483-84 (noting

that "[t]he Rule seeks to strike a balance between the need to curtail abuse of the

legal system and the need to encourage creativity in the law.").  Courts thus employ

a "stringent" standard to awarding Rule 11 sanctions because "such sanctions 1) are

'in derogation of the general American policy of encouraging resort to the courts for

peaceful resolution of disputes,' 2) tend to 'spawn satellite litigation counter-

productive to efficient disposition of cases,' and 3) 'increase tensions among the

litigating bar and between [the] bench and [the] bar.'" Doering v. Union County Board

of Chosen Freeholders, 857 F.2d 191,194 (3d Cir. 1988) (citations omitted).

        The court will not impose sanctions here. Plaintiff's complaint was an

unsuccessful attempt to argue that facts justified a tolling of the statute of limitations,

not an unreasonable and vexatious attempt to harass the defendants.  Given the

tragic facts underlying this case, the court will not sanction the plaintiff for attempting

to coerce payment from the parties who have profited from Kenneth Maula's

redistribution of his assets.  The motion for sanctions will therefore be denied.

**Conclusion**

        For the reasons stated above, the defendants' motions to dismiss will be

granted and Defendant 's motion for sanctions will be denied.  An appropriate order

follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOY DEBELLIS, As Administratrix** | : | **No. 3:07cv1932** |
| **of the Goods, Chattel and Credits** | : | |
| **of Louis J. DeBellis, Deceased,** | : | **(Judge Munley)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KENNETH MAULA,** | : | |
| **MARLENE MAULA,** | : | |
| **ANTHONY P. MAULA, and** | : | |
| **EMPIRE CONSTRUCTION LIMITED,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 21st day of August 2008, the defendants' motions to dismiss plaintiff's complaint (Docs. 6, 8, 9) are hereby **GRANTED**.  Defendant Anthony Maula and Empire Construction's motion for sanctions (Doc. 27) is hereby **DENIED**.  The Clerk of Court is directed to **CLOSE** the case.

**BY THE COURT:**

**s/ James M. Munley**
**JAMES M. MUNLEY**
**UNITED STATES DISTRICT JUDGE**